**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **NATHAN D. RICKLIN and MEGAN R. WOOLWINE** | **PLAINTIFFS** |
| **v.** | **Civil No. 1:25-cv-277-HSO-BWR** |
| **NATHAN D. CLARK, ESQ.,** *in his fiduciary capacity as Successor Trustee of the Crider Family Share Trust,* **and JULIETTE H. CRIDER** | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS'**
**MOTIONS [21], [25] TO DISMISS AND DISMISSING PLAINTIFFS NATHAN**
**D. RICKLIN'S AND MEGAN R. WOOLWINE'S COMPLAINT [1]**

This case is the latest chapter in the eight years of litigation relating to the administration of the Estate of L.E. Crider. The present dispute concerns whether distributions made to the Crider Family Share Trust by the Muskegon Energy Company are properly categorized as principal or income under Mississippi law. Defendants Nathan D. Clark, Esq., in his fiduciary capacity as Successor Trustee of the Crider Family Share Trust, and Juliette H. Crider seek dismissal of Plaintiffs Nathan D. Ricklin's and Megan R. Woolwine's claims for declaratory relief, on grounds that the Court lacks subject-matter jurisdiction under the probate exception to diversity jurisdiction, or alternatively, they ask that the Court abstain from exercising jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See* Mot. [21], [25].

The Court, *sua sponta*, considers its subject-matter jurisdiction and concludes that Plaintiffs have not adequately alleged diversity of citizenship under 28 U.S.C. § 1332(a), requiring dismissal.  Alternatively, Defendants' Motions [21], [25] should be granted and Plaintiffs' claims for declaratory relief under 28 U.S.C. § 2201 should be dismissed because their claims are barred by the probate exception to diversity jurisdiction.  And to the extent the Court would have subject-matter jurisdiction over this case, it will abstain from exercising that jurisdiction under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942).

## I.  BACKGROUND

After Lawrence E. Crider's ("L.E. Crider") death in 2018, non-party Jennifer Crider Ricklin-Voronstova filed a Petition for Probate of Last Will and Testament in the Chancery Court of Jackson County, Mississippi (the "Chancery Court").  *See* Dkt. [21-1] (Chancery Court Docket).  Two years later, on December 18, 2020, Ricklin-Voronstova and all interested parties, including Plaintiffs Nathan D. Ricklin ("Ricklin") and Megan R. Woolwine ("Woolwine"), reached a settlement agreement.  *See id.*; *see also* Dkt. [21-2] (Agreed Judgment).  Despite that agreement, the parties continued to litigate various issues relating L.E. Crider's Estate, and it was not until April 19, 2021, that the Chancery Court entered an Agreed Judgment of Dismissal and created the Crider Family Share Trust (the "Trust").  *See* Dkt. [21-2].  Pursuant to the Agreed Judgment, Haidee Oppie Sheffield ("Sheffield") was appointed as the Trustee, Defendant Juliette H. Crider ("Crider") was designated as the income beneficiary, Plaintiffs Ricklin and

2

Woolwine (collectively, "Plaintiffs") were designated as the remainder beneficiaries, and 7,966 shares of Muskegon Energy Company ("MEC") stock from L.E. Crider's Estate were distributed to the Trust.  *See* Compl. [1] at 2; Dkt. [21-2] at 2.  On November 4, 2025, the Chancery Court removed Sheffield as Trustee and appointed Nathan D. Clark as Successor Trustee, and he was substituted as a Defendant in this case.  *See* Ord. [32].

Today, the corpus of the Trust includes the same 7,966 shares of MEC stock that were originally distributed.  *See* Compl. [1] at 3.  In 2024, MEC made four payments to all shareholders which "totaled $105.00 per share or $26,299,455 in total."  *Id.*  According to Plaintiffs, MEC's payments to the Trust in 2024 totaled $846,430.00, and the Trustee allocated that amount to Defendant Crider as the income beneficiary.  *Id.*  In 2025, MEC made five more payments to shareholders, totaling "$110.00 per share or $27,551,810.00."  *Id.*  MEC's payments to the Trust totaled $876,260.00, and the Trustee allocated $716,940.00 of that sum to Defendant Crider as the income beneficiary.  *See id.*  Ricklin and Woolwine assert that although money received by a trust from an entity generally goes to the income beneficiary, under state law, money received in partial liquidation of an entity constitutes principal.  *See id.* at 4 (citing Miss. Code Ann. § 91-17-401(c)).  And they claim that MEC's distributions to the Trust in 2024 and 2025 came from a partial liquidation as defined under Mississippi Code Section 91-17-401 and should have been properly allocated to them as principal due to their status as remainder beneficiaries.  *See id.* at 5-6.

Invoking this Court's diversity jurisdiction, Plaintiffs filed suit advancing two claims for declaratory judgment under 28 U.S.C. § 2201.  *See id.* at 5-6.  First, they seek a declaration that MEC's distributions to the Trust between April 2024 and September 5, 2025, are principal rather than income under Mississippi law.  *See id.* at 5-6.  Their second claim requests that the Court enter a judgment declaring that the September 5, 2025, distribution from MEC to the Trust is principal under state law, *see id.* at 6, and they ask the Court to hold the sum of that distribution "in the Registry of this Court so that it is not distributed by the Trust until this matter is resolved," *id.*  Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction under the probate exception to diversity jurisdiction.  Alternatively, they ask the Court to abstain under the *Colorado River* abstention doctrine.  *See* Mot. [21], [25].

## II.  DISCUSSION

### A.    Legal Standard

"A Rule 12(b)(1) motion to dismiss challenges the subject-matter jurisdiction of the federal court."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing Fed. R. Civ. P. 12(b)(1)).  A plaintiff bears the burden of establishing a court's subject-matter jurisdiction.  *See id.*  "Under Rule 12(b)(1), a claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the claim."  *Id.* (citation omitted).  "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced

in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Id.* at 287 (citation omitted).

B.    Plaintiffs Have Not Shown That Diversity Jurisdiction Exists

Plaintiffs bring two claims under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See* Compl. [1]. But because "[t]he Declaratory Judgment Act is not an independent basis for subject matter jurisdiction," *Elldakli v. Garland*, 64 F.4th 666, 670 (5th Cir. 2023), and Plaintiffs raise no federal claims, subject-matter jurisdiction hinges on the presence of complete diversity of citizenship under 28 U.S.C. § 1332.

"Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)). "To properly allege diversity jurisdiction under § 1332, the parties need to allege complete diversity. That means all persons on one side of the controversy must be citizens of different states than all persons on the other side." *Id.* (cleaned up). "The difference between *citizenship* and *residency* is a frequent source of confusion," *id.* (emphasis in original), but "[c]itizenship and residence . . . are not synonymous terms," *Robertson v. Cease*, 97 U.S. 646, 648 (1878). As the Fifth Circuit has explained,

> Citizenship requires not only residence in fact but also the purpose to make the place of residence one's home. Therefore, an allegation of residency alone does not satisfy the requirement of an allegation of citizenship.

*MidCap Media Fin., L.L.C.*, 929 F.3d at 313 (internal quotations and citations omitted).  "The party seeking the federal forum has the burden of establishing diversity jurisdiction."  *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 356 (5th Cir. 2017).

"In determining diversity jurisdiction, 'a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.'"  *Id.* (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)).  Where "a trustee is named as a defendant in a lawsuit, '[the] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others.'"  *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n for Lehman Bros. Small Balance Com. Mortg. Pass-Through Certificates, Series 2007-3*, 881 F.3d 933, 940 (5th Cir. 2018) (quoting *Navarro*, 446 U.S. at 464 (alterations in original)).  Here, because Sheffield was named as a Defendant in this lawsuit, "[her] citizenship is determinative for purposes of diversity jurisdiction if [her] control over the trust's assets is real and substantial."[1]  *Id.*

The Complaint [1] alleges that Plaintiff Ricklin is "an adult resident of Colorado," that Plaintiff Woolwine is "an adult resident of Maryland," that Defendant Sheffield is "an adult resident of Jackson County, Mississippi," and that

---

[1] The "general rule" that "[t]he addition of a non-diverse party . . . typically destroys diversity jurisdiction," *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 37 (2025), "does not apply when an amendment merely substitutes a successor-in-interest for the first-named defendant.  In that situation, the former steps into the latter's shoes, and the diversity jurisdiction founded on the initial complaint thus continues," *id.* at 37 n.6.  Accordingly, the Court need not consider Clark's citizenship, only Sheffield's.

Defendant Crider is "an adult resident of Jackson County, Mississippi," Compl. [1] at 1.  Plaintiffs have not adequately alleged the *citizenship* of a single party and "an allegation of residency alone does not satisfy the requirement of an allegation of citizenship." *MidCap Media Fin., L.L.C.*, 929 F.3d at 313.  Because diversity jurisdiction is predicated on *citizenship* and the Complaint [1] does not allege the citizenship of any party, Plaintiffs have not carried their burden of establishing the Court's subject-matter jurisdiction over this case, and it should be dismissed for this reason alone.

C.     The Probate Exception to Diversity Jurisdiction Bars Plaintiffs' Claims

Notwithstanding the foregoing, Defendants contend that the probate exception to diversity jurisdiction precludes Plaintiffs' claims.  *See* Mem. [22] at 5. A federal court "has no jurisdiction to probate a will or administer an estate." *Markham v. Allen*, 326 U.S. 490, 494 (1946).  This exception to jurisdiction, known as the "probate exception," applies only to cases, such as this one, where subject-matter jurisdiction is premised on diversity of citizenship.  *See Curtis v. Brunsting*, 704 F.3d 406, 408-09 (5th Cir. 2013).  This exception has a "distinctly limited scope" and

> reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall v. Marshall*, 547 U.S. 293, 311-312 (2006); *see also Kinder Morgan, Inc. v. Crout*, 814 F. App'x 811, 815 (5th Cir. 2020) (per curiam) (quoting same).  The Supreme Court has explained that

> federal courts of equity have jurisdiction to entertain suits "in favor of creditors, legatees, and heirs" and other claimants against a decedent's estate "to establish their claims" so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in custody of the state court.
>
> * * *
>
> Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court . . . it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

*Markham*, 326 U.S. at 494 (quoting *Waterman v. Canal-Louisiana Bank & Trust Co.*, 215 U.S. 33, 43 (1909)).  The Fifth Circuit considers two factors in determining whether the probate exception deprives a federal court of jurisdiction:

> (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property.

*Curtis*, 704 F.3d at 409.  "If the answer to both inquiries is yes, then the probate exception precludes the federal district court from exercising diversity jurisdiction." *Id.*  This exception applies equally to property in a trust and to jurisdiction that is quasi in rem in nature.  *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939); *Marshall*, 547 U.S. at 300 (applying the probate exception to a living trust).

"The Court must look to state law to determine whether the property is within the custody of the state court." *Est. of Hobgood v. Pac. Life Ins. Co.*, No. 1:13-cv-201-HSO-RHW, 2013 WL 12209907, at *4 (S.D. Miss. Oct. 31, 2013) (citing *Curtis*, 704 F.3d at 409-10); *see also Three Keys Ltd. v. SR Util. Holding Co.*, 540 F.3d 220 (3d Cir. 2008) (applying Pennsylvania law).  The party invoking federal

8

jurisdiction "bears the burden of proving, by a preponderance of the evidence, that the probate exception does not apply . . . ." *Matter of Est. of Brown*, 650 F. Supp. 3d 515, 518 (S.D. Miss. 2023) (citing *Est. of Gordon v. Leidy*, No. 3:18-cv-266-DMB-JMV, 2019 WL 3347179, at *1 (N.D. Miss. July 25, 2019)).

1.   Whether Plaintiffs' First Claim for Declaratory Relief Falls Under the Probate Exception

The Trust calls for the net income to be distributed "quarterly[,] if possible, but in any event at least annually," to the income beneficiary, Defendant Crider. Dkt. [21-2] at 7.  Plaintiffs seek a declaration under 28 U.S.C. § 2201 that "the series of distributions made by MEC and received by the Trust from April 2024 to September 5, 2025, is [sic] principal under Mississippi law."  Compl. [1] at 6.  In support of their Motions [21], [25] to Dismiss, Defendants argue that the financial component of Plaintiffs' claims—the 7,966 shares of MEC stock—are assets of the Trust, which "was and is under the jurisdiction" of the Chancery Court.  Mem. [22] at 6.

Plaintiffs disagree.  As a preliminary matter, they argue that the Court should deny Defendants' Motions [21], [25] for the same reasons it did in *Ricklin-Voronstova v. Crider*, No. 1:22-cv-333-TBM-RPM, 2024 WL 1336454, at *5-6 (S.D. Miss. Mar. 28, 2024).  *See* Resp. [24] at 4.  There, this Court found that neither the probate exception nor *Colorado River* abstention prevented it from hearing Plaintiffs' claims for breach of fiduciary duty.  *See Crider*, 2024 WL 1336454, at *5. But that case is distinguishable because, although Plaintiffs raised the same distribution argument in *Crider* as they do here, jurisdiction in *Crider* was based

solely on the plaintiffs' state-law claims for breach of fiduciary duty.  *See id.* at \*2-3.

Indeed, the plaintiffs "conceded both of their claims related to that payment"

following the Mississippi Supreme Court's ruling that the distributions were

properly characterized as income, so those claims could not serve as the basis for

jurisdiction.  *Id.* at \*2; *see also Matter of Crider Fam. Share Tr.,* 379 So. 3d 885, 890

(Miss. 2024).

Next, Plaintiffs contend that the probate exception is inapplicable because

they seek "declaratory judgment of their rights under Mississippi law and the

Trust," and do not seek any "Estate property."  Resp. [24] at 5 (first citing *Crider*,

2024 WL 1336454, at \*4, and then citing *Markham*, 326 U.S. at 494).  Plaintiffs also

suggest that it "strains credulity for Defendant [Clark] to argue that claims for

declaratory relief implicate the probate exception.  Declaratory relief by nature is

not the probate or annulment of a will or disposition of property within the custody

of a probate court."  *Id.* at 5 n.2 (emphasis omitted).  "That is because 'the

recognition of the plaintiff's interest does not affect the probate of the will or the

administration of the estate.'"  *Id.* (quoting *Akin v. Louisiana Nat. Bank of Baton

Rouge*, 322 F.2d 749, 754 (5th Cir. 1963)).

Contrary to Plaintiffs' assertions, declaratory relief can implicate the probate

exception.  For example, the Eleventh Circuit affirmed the dismissal of a law firm's

declaratory judgment action seeking to establish it was "entitled to recover

$140,733.64 from the Estate of [deceased]" because "Baker Donelson's claim for

attorney's fees [were] part of the guardianship administration process."  *Baker,*

10

*Donelson, Bearman, Caldwell & Berkowitz, PC v. Chopin*, No. 22-10255, 2022 WL
4090841, at *1-2 (11th Cir. Sept. 7, 2022) (per curiam).  And in *Three Keys Limited
v. SR Utility Holdings Co.*, the Third Circuit examined SR Utility shares under the
"jurisdiction of the Orphan's Court," and concluded that the request for declaratory
judgment was barred by the probate exception because "[i]t seeks a federal court
determination of Three Key's ownership interest in SR Utility, which would dispose
of Estate property under the jurisdiction of the Orphan's Court."  540 F.3d at 229.
Nor is Plaintiffs' reliance on *Akin* persuasive.

In *Akin*, the plaintiff was born of her mother's first marriage.  322 F.2d at
751.  Subsequently, her mother remarried a man by the name of Charles W. Lamar,
Jr., who adopted the plaintiff.  *See id.*  But two years later, the plaintiff's mother
obtained a divorce from Lamar, and when Lamar died, the plaintiff sought to
intervene in Lamar's probate proceedings.  *See id.*  Specifically, she sought a
declaration ordering the defendants to "recognize the rights of Plaintiff as an
adopted child and heir of Charles W. Lamar, Jr., Deceased, and as such entitled to
her legitimate or forced portion of his Estate."  *Id.* at 750.  Concluding that the
probate exception did not apply, the Fifth Circuit explained that "the plaintiff sued
as an heir to reduce the distributive shares going to other heirs, thereby increasing
her share . . . [and] the recognition of the plaintiff's interest does not affect the
probate of a will or the administration of the estate."  *Id.* at 754.  *Akins* is consistent
with the general proposition that federal courts "have jurisdiction to entertain suits
in favor of creditors, legatees, and heirs and other claimants against a decedent's

11

estate to establish their claims so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court." *Id.* at 752-53.  It does not stand for the principle that "[d]eclaratory relief by nature is not the probate or annulment of a will or disposition of property within the custody of the probate court." Resp. [24] at 5 n.2.[2]

Lastly, Plaintiffs argue that they are not seeking estate property; "rather, they seek a determination of their property rights." *Id.* at 5.  And in a footnote, they assert that holding the distributions in the Registry of this Court would not require the Court to take in rem jurisdiction over property within the custody of the probate court because on October 17, 2025, while Defendants' Motions [21], [25] were pending, the Chancery Court "ordered [the Trustee] to distribute those funds to Defendant Crider," so the "glaring reality [is] that this property is not within the custody of the probate court." *Id.* at 6 n.3 (emphasis omitted).

Turning first to "whether the property in dispute is estate property within the custody of the probate court," *Curtis*, 704 F.3d at 409, neither party cites any caselaw analyzing this prong.  Nor does either party cite a single state statute that might shed some light on this issue.  Under Mississippi law, the Chancery Court

---

[2] The other cases cited by Plaintiffs are likewise unpersuasive.  For example, they cite *Enloe v. Deutsche Bank National Trust Co.*, No. 4:18-cv-00603-P-BP, 2020 WL 825815, at *9 (N.D. Tex. Jan. 29, 2020), for the proposition that the magistrate judge "recommend[ed] denial of probate exception abstention motion in case [sic] that presented 'competing declaratory judgment claims.'" Resp. [24] at 5 n.2.  But the magistrate judge was quoting the defendant's characterization of the case: "Defendants argue that the Court has jurisdiction over the case, the probate exception does not apply, and that the case 'essentially involves competing declaratory judgment claim . . . .'" *Enloe*, 2020 WL 825815, at *9.  And the probate exception did not apply because the case involved the foreclosure of a home, not the probate of a will or trust.  *See id.* at *3, *9.

12

shall have jurisdiction to hear and determine all questions in relation to the execution of the trust of the executor, administrator, guardian, or other officer appointed for the administration and management of the estate, and all demands against it by heirs at law, distributees, devisees, legatees, wards, creditors, or others . . . .

Miss. Code Ann. § 9-5-83. And the Mississippi Constitution provides that "[t]he chancery court shall have full jurisdiction in the following matters and cases . . . [m]atters testamentary and of administration," Miss. Const. § 159, including trust administration, *see In re Estate of Baumgardner*, 82 So. 3d 592, 599 (Miss. 2012).

Because the 7,966 MEC shares that make up the corpus of the Trust were initially part of L.E. Crider's Estate, they became estate property under the jurisdiction of the Chancery Court. *See id.*; Miss. Const. § 159. And that court maintains jurisdiction over the MEC shares at issue because the Trustee is an officer of the Chancery Court who administers the Trust subject to that court's orders. *See* Dkt. [21-1] (Chancery Court Docket) at [232], [234], [313], [335], [351], [352], [354], [367], [370], [373], [383], [388], [392], [405], [411], [414] (filings by the Trustee seeking permission to distribute assets or pay invoices); *see also Byers v. McAuley*, 149 U.S. 608, 615 (1893) ("An administrator appointed by a state court is an officer of that court. His possession of the decedent's property is a possession taken in obedience to the orders of that court. It is the possession of the court, and it is a possession which cannot be disturbed by any other court."). "One mechanism by which the probate court controls an executor is by requiring him or her to receive probate court approval prior to engaging in interested transactions," *Three Keys Ltd.*, 540 F.3d 228, and here, the Trustee must request permission from the Chancery Court before distributing assets, *see* Dkt. [21-1]. Based upon this record—

13

and the lack of any citation to contrary authority—it appears that the Trust and its assets are in the custody of the Chancery Court, and the Chancery Court continues to exercise control over the Trust and its distributions.  *See Byers*, 149 U.S. at 615. Accordingly, the property at issue is under the jurisdiction of the Chancery Court.[3]

Second, the Court must determine "whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property."  *Curtis*, 704 F.3d at 409.  Defendants argue that Plaintiffs seek "the disposal of estate assets" because they request "a judgment declaring the distributions from Muskegon Energy Company are principal and therefore subject to different distribution rules than is income."  Mem. [22] at 7.  Plaintiffs repeat their argument that the probate exception does not apply and only address the second factor in a footnote.  *See* Resp. [24] at 6 n.3.  They maintain that, because the Chancery Court "ordered [the Trustee] to distribute [the Trust] funds to Defendant Crider," the "property is not within the custody of the probate court," so this Court would not be exercising in rem jurisdiction over that property.  *Id.* (emphasis omitted).

> If a court's jurisdiction is based on its authority over the defendant's person, the action and judgment are denominated "in personam" and can impose a personal obligation on the defendant in favor of the plaintiff.  If jurisdiction is based on the court's power over property within its territory, the action is called "in rem" or "quasi in rem."

---

[3] At times, Plaintiffs frame their argument as one for a declaration of rights "in the Trust," Resp. [24] at 4, but at other times, they specifically refer to the distributions—the money as opposed to the shares—in making their arguments, *see id.* at 6 n.3.  In any event, the Trust assets, the shares, are in the custody of the probate court, and the Trustee must seek permission to make distributions. Simply put, the Chancery Court is still managing the distribution of trust funds and the administration of the property.  *See In re Hall's Est.*, 193 So. 2d 587, 592 (Miss. 1967) ("The Chancery Court has the power and authority to appoint a trustee or trustees to manage the trust property, to direct them as to the method of selecting beneficiaries, and the distribution of the trust funds, and to otherwise administer the trust property.").

*Shaffer v. Heitner*, 433 U.S. 186, 199 (1977); *see also Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958) ("A judgment in rem affects the interests of all persons in designated property.  A judgment quasi in rem affects the interests of a particular person in designated property."); Jurisdiction, Black's Law Dictionary (12th ed. 2024) (defining in rem jurisdiction as "[a] court's power to adjudicate the rights to a given piece of property, including the power to seize and hold it").

Here, because the property in question is under the jurisdiction of the Chancery Court, this Court cannot assume in rem jurisdiction over that property.  Although Plaintiffs style their request for declaratory relief as only seeking a declaration of their rights, *see* Resp. [24] at 5, their rights have already been declared: under the Agreed Judgment, they are remainder beneficiaries entitled to principal, *see* Dkt. [21-2].  What Plaintiffs are seeking is effectively a declaration regarding the character of the property being distributed by the Trustee.  And a declaratory judgment in Plaintiffs' favor would require the Court to assume in rem jurisdiction; it would be required to adjudicate the rights of all parties to these monetary distributions.  In *Markham*, the Supreme Court explained that

> while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court . . . it may exercise its jurisdiction to adjudicate rights in such property where the *final judgment does not undertake to interfere with the state court's possession* save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.

326 U.S. at 494 (emphasis added).  And in *Marshall*, the Supreme Court explained the "interference" language as

> essentially a reiteration of the general principle that, when one court is exercising in  rem jurisdiction  over  a res, a  second  court  will  not

15

assume in rem jurisdiction over the same res. Thus, the probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.

547 U.S. at 296.

Here, Plaintiffs' claims are directed at the probate court's characterization of, control over, and by extension, the disposition of certain assets—the distributions—and its determination that the assets should be classified and distributed a certain way. And there is a distinction between "an in personam action seeking a judgment that a party has the right to a distributive share of an estate, but stopping short of determining a party's interest in specific estate property, and an in rem action," which "seeks a determination of a party's interest in specific property in the custody of the state court." *Three Keys Ltd.*, 540 F.3d at 229. Plaintiffs seek the latter; they want a determination of their interest in specific property—the shares and distributions of money—both of which are in the custody of the probate court. Although some courts have found declaratory judgment claims like Plaintiffs' to be appropriate, those cases tend to involve either an inter vivos trust or a suit regarding interest in a Trust after probate proceedings have ended and after the state court has relinquished control over the assets. *See, e.g., York v. Toone*, No. 6:17-cv-00076, 2017 WL 7789904, at *2 (W.D. Tex. Oct. 11, 2017), *report and recommendation adopted,* No. 6:17-cv-76-RP, 2018 WL 3338224 (W.D. Tex. Mar. 19, 2018). Neither situation is implicated here because the Trust was created by the Chancery Court which has retained control over distributions.

16

Plaintiffs' first claim for declaratory relief is directed at the Chancery Court's distribution of assets, and because resolving this claim would require exercising in rem jurisdiction over property in the custody of the state court, the probate exception bars this claim.  *See Three Keys Ltd.*, 540 F.3d at 229 (requesting "declaratory judgment" in the nature of a declaration of ownership interest in stocks currently in the custody of the probate court to the exclusion of other claimants required the exercise of in rem jurisdiction and implicated the probate exception).

2.      <u>Whether Plaintiffs' Second Claim for Declaratory Relief Falls Under the Probate Exception</u>

Plaintiffs' second claim for declaratory relief asks this Court to declare "that the September 5, 2025, distribution of MEC received by the Trust is principal under Mississippi law."  Compl. [1] at 6.  They also request "that the Court hold the sum of the September 5, 2025, distribution made by MEC and received by the Trust in its Registry."  *Id.*  Defendants contend that this claim falls under the probate exception because the Trust's assets—the 7,966 shares of MEC stock—are "under the jurisdiction of the Jackson Country Chancery Court," and Plaintiffs are asking the Court to "take possession of the assets of the Trust/Estate."  Mem. [22] at 6, 7. Plaintiffs counter with the same arguments as before, namely that the probate exception does not apply to claims for declaratory relief, *see* Resp. [24] at 5, and that holding the distributions in the Registry of this Court would not require it to take in rem jurisdiction over property within the custody of the probate court, *see id.* at 6 n.3.

17

But the property in dispute, both the shares and the assets for distribution, are in the custody of the state court. And on its face, Plaintiffs' request that the Court "hold the sum of the September 5, 2025, distribution made by MEC and received by the Trust in its Registry," Compl. [1] at 6, would require the Court to exercise in rem jurisdiction, *see Shaffer*, 433 U.S. at 199; Jurisdiction, Black's Law Dictionary (12th ed. 2024) (defining in rem jurisdiction). At this stage, the burden is on Plaintiffs to show that the probate exception does not apply, *see Matter of Est. of Brown*, 650 F. Supp. 3d at 518, and they have not carried that burden.

Moreover, even if Plaintiffs are correct in their contention that the property is no longer in the custody of the state court, *see* Resp. [24] at 6 n.3, the relief they seek—that the Court step in and hold the same assets that the Chancery Court ordered distributed to Defendant Crider—would have the effect of enjoining a state-court order. No party has briefed whether the Anti-Injunction Act, 28 U.S.C. § 2283, would bar this relief, but in the Court's view, holding a prior-ordered distribution while the parties litigate this case would invalidate the enforcement of a state-court judgment, potentially running afoul of the Act. *See United States v. Billingsley*, 615 F.3d 404, 409 (5th Cir. 2010) ("The Act does not prohibit only injunctions directed at state courts themselves, but also injunctions directed at private parties when the injunction would prohibit using the results of a state court proceeding."); *Oracle Gas, LLC v. Beacon Supply Co., Inc.*, No. 2:16-cv-142-KS-MTP, 2017 WL 5653893, at *2 (S.D. Miss. Mar. 10, 2017) ("[I]f the Anti-Injunction Act bars injunctive relief, a declaratory judgment that would have the same effect is

18

likewise prohibited." (citing *Total Plan Servs., Inc. v. Tex. Retailers Ass'n*, 925 F.2d 142, 145 n.1 (5th Cir. 1991)).

D.    Whether *Brillhart* Abstention Applies to Plaintiffs' Claims[4]

Regardless of whether the probate exception bars Plaintiffs' claims, the Court would abstain.  The Constitution vests in Congress the power to create lower courts. *See* U.S. Const. art. III, § 1.  Along with Congress's power to create lower courts comes its power to determine the bounds of their jurisdiction.  *See Sheldon v. Sill*, 49 U.S. 441, 449 (1850); *Fire-Dex, LLC v. Admiral Ins. Co.*, 139 F.4th 519, 526 (6th Cir. 2025), *cert denied*, 223 L. Ed. 2d 507 (Jan. 12, 2026) (same).  Simply put, "Congress decides who decides." *Fire-Dex, LLC*, 139 F.4th at 526.  And typically, when a district court has jurisdiction over a dispute, it has a "virtually unflagging obligation" to hear and decide the case.  *Colorado River*, 424 U.S. at 817.  But "declaratory judgments are different." *Fire-Dex, LLC*, 139 F.4th at 526-27.  That is because the Declaratory Judgment Act, 28 U.S.C. § 2201, "expressly vested federal courts with discretion whether to entertain actions for declaratory relief." *Id.* at 527.  The Act's plain text provides that "any court of the United States, upon filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Recognizing this, the Supreme Court has explained that district courts are "under

_____

[4] Neither party raised *Brillhart* abstention.  Nonetheless, because Plaintiffs seek only declaratory and not coercive relief, *see* Compl. [1]; Resp. [24] at 5 ("In this lawsuit, Plaintiffs assert two claims, both for declaratory judgment of their rights under Mississippi law and the Trust."), the more stringent "exceptional circumstances" standard derived from *Colorado River* does not apply to this case, *see Wilton v. Seven Falls, Co.*, 515 U.S. 277, 286 (1997); *see also African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 797 n.29 (5th Cir. 2014).

no compulsion" to exercise jurisdiction for suits under the Declaratory Judgment Act, *Brillhart*, 316 U.S. at 494, and they have "unique and substantial discretion in deciding whether to declare the rights of litigants," *Wilton*, 515 U.S. at 286.

A district court considering whether to abstain from exercising jurisdiction over a declaratory judgment action must apply the standard derived from *Brillhart*. *See Koch Project Sols., L.L.C. v. All. Process Partners, L.L.C.*, No. 21-20093, 2022 WL 16859961, at *5 (5th Cir. Nov. 11, 2022) (per curiam); *New England Ins. Co. v. Barnett*, 561 F.3d 392, 394 (5th Cir. 2009).  The Fifth Circuit has articulated a three-step inquiry to determine whether abstention from a declaratory judgment action is appropriate.  *See Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).  First, the Court must resolve whether the declaratory action is justiciable, that is, whether "an 'actual controversy' exists between the parties to the action." *Id.*  If so, the Court must then decide whether it has the "authority" to grant declaratory relief.  *Id.*  And third, it must "determine how to exercise its broad discretion to decide or dismiss" the action.  *Id.*

With respect to the "authority" requirement at the second step, a district court lacks authority to decide a declaratory judgment action when issuing a declaratory judgment would be tantamount to enjoining a state proceeding in violation of the Anti-Injunction Act, 28 U.S.C. § 2283.  *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993).

> Thus, as a general rule, the district court may not consider the merits of the declaratory judgment action when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in

20

the federal case, *and* 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act.

*Id.* (emphasis in original).

At the third step, the Fifth Circuit has identified seven nonexclusive factors to guide a district court's discretion regarding whether to abstain:

(1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Koch Project Sols.*, 2022 WL 16859961, at *5 (citing *Southwind Aviation, Inc. v. Bergen Aviation, Inc.*, 23 F.3d 948, 950 (5th Cir. 1994) (per curiam)). At bottom, "the *Brillhart* inquiry is grounded in three fundamental concerns: federalism, fairness, and efficiency." *Id.*

1.    The *Brillhart* Factors Weigh in Favor of Dismissing this Action

Even if the Court had subject-matter jurisdiction under 28 U.S.C. § 1332, *see supra* II.B, and even if Plaintiffs' claims were not otherwise barred by the probate exception or the Anti-Injunction Act, *see supra* II.C.1-2, the Court would abstain from exercising jurisdiction in this case. At the first step, this matter is justiciable because an actual controversy exists between the parties. *See Orix Credit All., Inc.*, 212 F.3d at 895. At the second step, although Defendant had not filed a separate suit against Plaintiffs, *see id.*, the Trustee had filed a Petition for Direction

21

regarding distributions before the Chancery Court, *see* Dkt. [21-1] at [411], and the state case involves the same issues as those raised here, *see id.*  Given the status of the action pending before the Chancery Court and because the relief sought might have the effect of enjoining those proceedings, Plaintiffs' claims might also be barred under the Anti-Injunction Act.  *See* 28 U.S.C. § 2283; *see also Travelers Ins. Co.*, 996 F.2d at 776.  Turning to the third step, after considering the seven nonexclusive factors, abstention is proper.

a.    Pending State Court Action

The first factor asks "whether there is a pending state court action in which all of the matters in controversy may be fully litigated." *Koch Project Sols.*, 2022 WL 16859961, at *5.  "[I]f the federal declaratory judgment action raises only issues of state law and a state case involving the same state law issues is pending, generally the state court should decide the case and the federal court should exercise its discretion to dismiss the federal suit." *Sherwin-Williams Co. v. Holmes Cnty*, 343 F.3d 383, 391 (5th Cir. 2003).  The presence or absence of a parallel state proceeding does not require abstention, *see id.* at 394, and "*Brillhart* abstention is not confined to occasions where the proceedings are exactly parallel," *Bedivere Ins. Co. v. Pac. Van & Storage of Texas, Inc.*, No. 3:16-cv-1111-D, 2017 WL 2572775, at *8 (N.D. Tex. June 14, 2017); *see also Ironshore Specialty Ins. Co. v. Tractor Supply Co.*, 624 F. App'x 159, 166 (5th Cir. 2015) ("It is clear that a district court may decline to decide a declaratory judgment suit where another suit is pending in state

22

court presenting the same issues, not governed by federal law, between the same parties.").

In briefing *Colorado River* abstention, Plaintiffs argue that there are "no claims pending between the parties in state court," so "there are no parallel proceedings."  Resp. [24] at 7.  Defendants counter that, at the time the Complaint [1] was filed, the Trustee's Petition for Direction regarding distributions was pending before the Chancery Court, and the issues presented there overlap significantly with the issues in this case.  *See* Mem. [22] at 7.  They argue that because "the matters at bar are the same, if not substantially similar, to the still ongoing litigation" in the Chancery Court, the proceedings are parallel.  Reply [30] at 6; *see also* Mem. [22] at 10 (same).

Although there is no separate lawsuit between the parties and Chancery Court proceedings are in some ways different from a traditional state-court case, the Chancery Court proceedings involve "the same parties and the same issues," *Exxon Corp. v. St. Paul Fire and Marine Ins. Co.*, 129 F.3d 781, 785 (5th Cir. 1997), and the actions need not be exactly parallel for *Brillhart* abstention to apply, *see Bedivere Ins. Co.*, 2017 WL 2572775, at *8.  Here, at the time of the filing of the Complaint [1], there was a pending Motion for Direction before the Chancery Court seeking guidance regarding the MEC share distributions to the Trust, *see* Dkt. [21-1] at [411], and the Chancery Court had scheduled a hearing on the matter, *see id.* at [412], [413].  In response to the Trustee's motion in Chancery Court, Plaintiffs filed suit in this Court, asking it to determine whether the distributions by MEC to

23

the Trust qualified as principal or income under state law, and to hold any distributions pending the outcome of this litigation. *See* Compl. [1] at 4-6.

There can be no doubt that the underlying Chancery Court proceedings involve the same parties and the same issues. Although this Court does not have access to the parties' briefing before the Chancery Court and Plaintiffs may not have raised precisely the same argument in opposing the distribution, it seems likely that the Chancery Court will have to resolve that issue in making its determinations about future distributions. Because "there is a pending state court action in which all of the matters in controversy may be fully litigated," *Koch Project Sols.*, 2022 WL 16859961, at *5, this factor favors abstention.

b.    Anticipatory Litigation

Next, the Court considers "whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant." *Id*. "Often, courts find that anticipatory suits weigh in favor of dismissal when the declaratory judgment plaintiff engaged in 'procedural fencing.'" *Ironshore*, 624 F. App'x at 167 (citing *Sherwin-Williams*, 343 F.3d at 397 & n.7). Examples of this include "filing the declaratory action before the other party is legally able to bring a state action due to some exhaustion requirement or using the federal court suit for the sole purpose of determining which state's law would apply." *Penn-Am. Ins. Co. v. Haros, L.L.C.*, No. 1:22-cv-00706, 2023 WL 2997863, at *13 (W.D. La. Apr. 3, 2023) (citing *Sherwin-Williams*, 343 F.3d at 397-99*), recommendation adopted sub nom. Penn-Am. Ins. Co. v. Haros LLC*, No. 1:22-cv-0706, 2023 WL 2992722 (W.D. La. Apr. 18, 2023).

24

Here, it does not appear that Plaintiffs filed this case in anticipation of an actual lawsuit by Defendants. But it does appear that Plaintiffs brought this suit in response to the Trustee seeking guidance regarding future distributions. *Compare* Compl. [1], *with* Dkt. [21-1]. While this is not one of the textbook examples of "procedural fencing" recognized by the Fifth Circuit, in substance, that is what is occurring. The Chancery Court docket reflects that on August 28, 2025, the Trustee sought direction regarding future distributions from MEC to the Trust. *See* Dkt. [21-1] at [411]. The Chancery Court set the matter for a hearing, but Plaintiffs filed suit in this Court before the Chancery Court could hear or rule on the motion, seeking a declaration regarding whether the distributions were properly categorized as principal or income. *Compare* Dkt. [21-1] at [412], [413], *with* Compl. [1] at 6-7. Evidently, Plaintiffs hoped to obtain an interpretation of the state statute they could then apply to those proceedings. And there is some evidence of this on the Chancery Court docket because when the Trustee moved to distribute the funds, *see* Dkt. [21-1] at [414], Plaintiffs sought to stay that relief citing the Complaint [1] in this case, *see id.* at [416]. This factor weighs in favor of abstention.

c.    Forum Shopping

The third factor asks whether "the plaintiff engaged in forum shopping in bringing the suit." *Koch Project Sols.*, 2022 WL 16859961, at *5. The Court finds that Plaintiffs engaged in forum shopping and this factor strongly favors abstention. Despite an Agreed Judgment in Chancery Court, the parties have continued to litigate aspects of the Trust and its administration in state and federal court. *See,*

25

*e.g.,* Dkt. [21-1] (listing 420 docket entries); *Matter of Crider Fam. Share. Tr.*, 379 So. 3d at 886 (classification of distributions); *Crider*, 2024 WL 1336454, at \*5-6 (breach of fiduciary duty).  And less than two years ago, Plaintiffs presented the same argument they now raise here to the Mississippi Supreme Court, namely that the Trustee "had failed to properly allocate Muskegon's distribution, allegedly in partial liquidation, to them as remainder beneficiaries."  *Matter of Crider Fam. Share. Tr.*, 379 So. 3d at 886.  Like here, Plaintiffs argued that Mississippi Code Section 91-17-401 entitled them to distributions because "by their calculations, the dividend payout" reached the threshold to qualify as a "partial liquidation" under state law.  *Id.* at 887.  The Mississippi Supreme Court rejected Plaintiffs' argument and concluded that under the statute, an "entity's partial liquidation calculations should be determined on a post-tax basis," and under that standard, the Chancery Court correctly allocated the distributions as income.  *Id.* at 890.

Following the Mississippi Supreme Court's ruling, the Mississippi Legislature changed the calculation formula.  *See* Miss. Code. Ann. § 91-17-401; 2025 Miss. Laws Ch. 366.  After the Legislature changed the formula, Plaintiffs could have renewed their action with the Chancery Court or sought a declaratory judgment on the matter.  But they didn't.  Instead, after the Trustee sought guidance from the Chancery Court, and after the matter was set for a hearing, Plaintiffs filed suit here asking this Court to rule on the same issue under the new formula.  *Compare* Compl. [1] (seeking declaration regarding asset classification), *with Matter of Crider Fam. Share. Tr.*, 379 So. 3d at 885 (same).  Although diversity

26

jurisdiction was originally created to protect out-of-state litigants from the potential biases of state courts, *see Burgess v. Seligman*, 107 U.S. 20, 34 (1883), on this record, it is clear that Plaintiffs did not seek an "independent tribunal[] . . . unaffected by local prejudices," *id.* Rather, they sought a new forum after unsuccessful litigation in the previous one, and after state proceedings affecting the next round of distributions were underway. In the Court's view, this was an attempt at forum shopping, and this factor strongly favors abstention. *See Koch Project Sols.*, 2022 WL 16859961, at *6 (concluding that the defendant's conduct of initiating a new federal suit was "not a mere effort to avoid state court bias," where the new suit had significant overlap between federal and state proceedings).

d.    Possible Inequities

Fourth, the Court examines whether "possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist." *Id.* at *5. In other disputes, the Fifth Circuit has considered the existence of a state-court suit involving the same parties and involving the same issues, *see, e.g., Ironshore*, 624 F. App'x at 168, with an eye towards avoiding situations where a declaratory judgment plaintiff may gain precedence in time or change a previously selected forum for the declaration sought, *see Shermin-Williams*, 343 F.3d at 391.

An opinion by this Court could contradict the Chancery Court's rulings, which would create inequities by giving Plaintiffs precedence. *See Haros, L.L.C.*, 2023 WL 2997863, at *14 (finding this factor weighed in favor of abstention where a federal court opinion could contradict a state court decision). The Chancery Court

27

has already ordered a distribution to Defendant Crider, and Plaintiffs seek a declaration that these assets are principal, not income, under state law. A declaration by this Court could conflict with the Chancery Court's order. And it appears likely that the Chancery Court may have to address Plaintiffs' question in determining whether to make future distributions. The Court finds that this factor weighs in favor of abstention.

e.    Convenience of Federal Forum

The next prong asks "whether the federal court is a convenient forum for the parties and witnesses." *Koch Project Sols.*, 2022 WL 16859961, at \*5. The Chancery Court is located in Jackson County, Mississippi, and this Court is located in Harrison County, Mississippi. The forums are equally convenient, so this factor is neutral. *See id.* at \*6.

f.    Judicial Economy

Next, the Court considers "whether retaining the lawsuit would serve the purposes of judicial economy," *id.* at \*5, and concludes that it would not. "A federal district court should avoid duplicative and piecemeal litigation where possible," *Sherman-Williams*, 343 F.3d at 391, and "[j]udicial economy may also implicate concerns about federalism and comity, especially when duplicative litigation could produce conflicting judgments on matters of state law," *Koch Project Sols.*, 2022 WL 16859961, at \*7.

At the time of the filing of the Complaint [1], the Chancery Court was preparing to hear a motion regarding the next round of distributions. That question

28

necessarily involves the Trustee's ability to allocate distributions from MEC to the Trust as principal or income, the same issue presented here.  Because the Chancery Court has answered this question in the past and will likely have to answer it again in the future, exercising jurisdiction would not be economical.  *See id.*; *Penn-Am. Ins. Co. v. Roofing Guys, LLC*, No. CV 3:25-00328, 2026 WL 637037, at *7 (W.D. La. Mar. 6, 2026) (concluding the sixth factor favored abstention because "[t]he purely state law issue of coverage asserted in this case also is present in the [state court] Suit").  Nor would it be economical for this Court to interpret a new Mississippi law for the first time when the Chancery Court is more familiar with the subject matter and can resolve the issue in the pending proceedings.  *See Sherwin-Williams*, 343 F. 3d at 396 (noting the importance of the presence of "federal law questions, their relationship to state law questions, the ability of the federal court to resolve state law issues, and the ability of a state court to resolve federal issues" in deciding which court should decide the issues raised in a declaratory judgment action).

Moreover, as the Court has already concluded, presiding over this matter would increase the risk of conflicting judgments. At the time Plaintiffs filed their Complaint [1], the Trustee's Motion for Guidance was pending, *see* Dkt. [21-1] at [411], and while Defendants' Motions [21], [25] were pending before this Court, the Chancery Court ordered the next round of distributions, *see id.* at [419].  If this Court were to reach a different conclusion, the Trustee could not comply with both orders.  The case here remains in its infancy; no answer has been filed, and no case

29

management conference or discovery has occurred. *Cf. Ironshore*, 624 F. App'x at 168 (holding that, where the parties had fully briefed the merits of the insurance issues and had entered into extensive factual stipulations in the district court, judicial economy weighed against dismissal).

In sum, presiding over this case would not serve judicial economy and would needlessly increase the risk of conflicting judgments. The sixth factor weighs in favor of abstention. *See Koch Project Sols.*, 2022 WL 16859961, at *7.

g.    State Judicial Decree

Seventh, the Court considers "whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Id.* at *5. Here, there is a state judicial decree: an Agreed Judgment of Dismissal which created the Trust and describes to whom distributions should flow. *See* Dkt. [21-1]. Although this decree does not define principal versus income—and this case may not require interpreting the terms of the decree—to the degree this case requires an interpretation of the Agreed Judgment of Dismissal or the Trust it created, it makes more sense for the Chancery Court to interpret it. *See St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 591 n.8 (5th Cir. 1994) ("For example, here the district court should determine whether it makes more sense for the state court that approved the First Settlement to interpret it."). This factor also favors abstention.

h.    Collective Analysis of Factors

"[T]here is . . . nothing automatic or obligatory about the assumption of 'jurisdiction' by a federal court to hear a declaratory judgment action."  *Wilton*, 515 U.S. at 288.  Having considered the enumerated factors that guide the Court's "unique and substantial discretion," it finds that they weigh in favor of abstaining under *Brillhart*.  *Id.* at 286.  "[T]he *Brillhart* inquiry is grounded in three fundamental concerns: federalism, fairness, and efficiency."  *Koch Project Sols.*, 2022 WL 16859961, at *5.  Exercising jurisdiction here would undermine all three.  And dismissal is appropriate because a stay pending a final determination of the state action, which includes all parties and involves the same issues, would have the same effect as a dismissal.  *See PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 682 (5th Cir. 1973).

## III.  CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motions [21], [25] of Defendants Nathan D. Clark, Esq., in his fiduciary capacity as Successor Trustee of the Crider Family Share Trust, and Juliette H. Crider to Dismiss Pursuant to Rule 12(b)(1), are **GRANTED**, and Plaintiffs Nathan D. Ricklin's and Megan R. Woolwine's Complaint [1] is **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction under 28 U.S.C. § 1332.

31

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, in the alternative, the Court **ABSTAINS** from deciding Plaintiffs' claims for declaratory relief, and Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE** pursuant to the *Brillhart* abstention doctrine.  The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 17th day of June, 2026.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE